# United States District Court

## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| JARRETT GIRARD | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:24-CV-0849-S |
| CITY OF CORSICANA, CORSICANA | § | |
| POLICE DEPARTMENT, and CHIEF | § | |
| OF POLICE ROBERT JOHNSON | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendants City of Corsicana, Corsicana Police Department, and Chief of Police Robert Johnson's Rule 12(b)(6) Motion to Dismiss ("Motion") [ECF No. 9]. The Court has reviewed the Motion, Plaintiff Jarrett Girard's Response in Opposition to the Motion ("Response") [ECF No. 11], Defendants' Reply to Plaintiff's Response ("Reply") [ECF No. 20], Plaintiff's Surreply in Opposition to the Motion [ECF No. 21], and the applicable law. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I. BACKGROUND

This employment discrimination lawsuit arises out of Plaintiff's employment with the Corsicana Police Department ("Police Department"). Plaintiff Jarrett Girard, who "is a . . . Hispanic gay male," began working for the Police Department as a Police Officer on June 22, 2015. Pl.'s Original Compl. ("Complaint") ¶¶ 9, 16. Plaintiff's supervisor was Sergeant Mark Nanny. *Id.* ¶ 17.

When Plaintiff started working for the Police Department, he "sought to hide his sexual orientation." *Id.* ¶ 18. Nonetheless, Plaintiff claims that he began to be harassed "almost immediately." *Id.* Plaintiff provides several examples of this alleged harassment. In 2018, Plaintiff

received an unsolicited message from a jailer working for the Navarro County Sheriff's Office, who stated that Plaintiff's partner at the Police Department wanted to know if Plaintiff was gay. *Id.* ¶ 19. On another occasion, the son of Chief of Police Robert Johnson allegedly asked everyone working in the Police Department's Dispatch Division if Plaintiff was gay. *Id.* ¶ 20. Another time, Plaintiff claims that coworkers ridiculed him and insinuated that he was not masculine enough when they accused him of wearing a brand of jeans commonly worn by women. *Id.* ¶¶ 28-29. Plaintiff also alleges that a coworker told him that other employees said that "they needed to be careful around Plaintiff when Plaintiff worked out at the gym because he was a gay Hispanic male." *Id.* ¶ 30. In 2020, Plaintiff informed Nanny that his husband tested positive for COVID-19. *Id.* ¶ 36. "Defendants[]" allegedly said, "well, it's not a family member, but that's another story." *Id.* ¶ 38. And in 2021, Plaintiff learned that a Police Department employee was again asking other employees if Plaintiff was gay. *Id.* ¶ 40.

According to Plaintiff, Defendants' "homophobic attitude and harassment" extended to other employees as well. *Id.* ¶ 31. When Defendants hired an IT employee who wore more feminine clothing, longer hair, and makeup, employees allegedly referred to the individual as "it" and a "freak." *Id.* ¶¶ 32-33. Further, Defendants installed a lock on the women's restroom and changed the office's "single person restroom" to a women's restroom. *Id.* ¶¶ 34-35.

Plaintiff also alleges that he was treated differently than other employees. For example, in 2019, Plaintiff was the victim of an arson attack, which resulted in his personal vehicle being destroyed in front of his home. *Id.* ¶ 21. Plaintiff reported the attack to the Police Department, but neither the Police Department nor the City of Corsicana ("City") did anything to assist Plaintiff. *Id.* ¶¶ 22-23. Instead, Johnson allegedly had the Corsicana Police Association President "intimidate[]" Plaintiff with threats of retribution to coerce Plaintiff into removing social media

posts about the incident. *Id.* ¶¶ 24-25. According to Plaintiff, other employees were not similarly threatened for posting on social media platforms. *Id.* ¶ 26. Plaintiff also was allegedly threatened with retribution for using his cell phone during patrol, even though that was not an unusual practice. *Id.* ¶ 39. In 2021, Johnson asked Captain Lanora Rhodes to tell Plaintiff to remove a video from social media. *Id.* ¶ 41. According to Plaintiff, other employees, including Johnson, regularly posted videos to the same platform and were not disciplined. *Id.* ¶¶ 42, 46. As a result of the incident with the video, Plaintiff learned both that another officer was asked to file a complaint against Plaintiff so that Plaintiff could be terminated and that the City Manager wanted Plaintiff to be terminated. *Id.* ¶¶ 44, 47. Ultimately, Nanny and Lieutenant Todd Morris gave Plaintiff a "letter of counseling" related to the videos. *Id.* ¶ 45. In 2022, Plaintiff, following "standard operating procedures," told his daily supervisor that he would have to miss a training session. *Id.* ¶ 51. When Plaintiff returned to work, he was told that Johnson was unhappy and "was going to cut some 'f***ing heads off.'" *Id.* ¶ 52. That same year, Nanny disciplined Plaintiff for staying at a location in his patrol car for several hours, even though doing so allegedly was common and other officers were not disciplined for the same conduct. *Id.* ¶ 53.

While the bulk of Plaintiff's factual allegations deal with discrimination and harassment due to his sexual orientation, Plaintiff also references alleged national origin discrimination. In addition to the employees' gym comment referenced above, Plaintiff alleges that Nanny made "numerous racist comments." *Id.* ¶ 49. In a letter attached to the Complaint,[1] Plaintiff alleges that Nanny made at least two "[r]acist remarks and comments" in front of him: (1) "f[***] them foreigners they are not even from here"; and (2) "I don't take complaints from illegals." Compl.,

---

[1] In ruling on a Rule 12(b)(6) motion, the pleadings that the Court reviews include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citation omitted).

Ex. 1 ("Exhibit 1") [ECF No. 1-1] 6-7. Plaintiff also alleges that he was told Nanny made racist comments in front of other officers. *Id.* at 7. When Plaintiff reported this behavior to Rhodes, Plaintiff was told that he could not say "those things" in front of Rhodes. Compl. ¶ 49.

Plaintiff lodged other complaints throughout his employment. Plaintiff complained to Morris, although the subject of that complaint is unclear. *Id.* ¶ 50. On March 22, 2022, Plaintiff reported to Nanny that he was being treated differently than other officers. *Id.* ¶ 54. That same day, Nanny told Plaintiff that Johnson was angry at Plaintiff for complaining about how he was being treated. *Id.* ¶ 55. On March 25, 2022, Plaintiff filed a formal complaint with the Human Resources Department. *Id.* ¶ 56. In the complaint, Plaintiff stated that he was being treated differently, ridiculed, singled out, targeted, harassed, and humiliated because he was a gay Hispanic male. *Id.* ¶ 57. Plaintiff further alleged that Hispanic and Black individuals were almost certain to get ticketed by Nanny during traffic stops and that Johnson showed officers how to "accidentally" stop their body cameras if "they need[ed] to accost a detainee." *Id.* ¶¶ 58-59.

The next day, March 26, Plaintiff called in sick. *Id.* ¶ 60. When Plaintiff returned to work on March 27, Nanny ordered Plaintiff to document his sick day, even though doing so "was not policy, procedure[,] or a requirement of Defendants at that time." *Id.* ¶ 62. In April 2022, Plaintiff was placed on administrative leave. *Id.* ¶ 64. When Plaintiff returned to work, he asked to be transferred to another day shift or to a vacant Detective position so that Nanny would no longer be his supervisor. *Id.* ¶¶ 66, 68-69. Defendants denied Plaintiff's requests. *Id.* ¶ 70.

On July 6, 2022, Plaintiff complained to the City Manager that he felt he was not being treated fairly. *Id.* ¶ 72. That same month, Plaintiff formally applied for the vacant Detective position. *Id.* ¶ 73. Defendants allegedly chose a less qualified candidate over Plaintiff. *Id.* ¶ 74. Defendants' selecting officials told Plaintiff "that he would not be selected because of complaints

that Plaintiff had made about the Police Department." *Id.* ¶ 75. Later in the month, Plaintiff requested authorization to attend a continuing education course. *Id.* ¶ 76. Johnson denied the request. *Id.* ¶ 77. In March 2023, Plaintiff posted on one of his personal social media pages about Nanny ticketing Hispanic individuals. *Id.* ¶ 78. Defendants told Plaintiff that he would be arrested if he did not immediately remove the posts. *Id.* ¶ 79.

On September 13, 2022, Plaintiff resigned from the Police Department "because he felt intimidated, harassed[,] and ridiculed." *Id.* ¶ 80. Plaintiff took a job with the Navarro College Department of Public Safety. *Id.* ¶ 81. Johnson allegedly disparaged Plaintiff to his new employer and told Navarro College about Plaintiff's complaints. *Id.* ¶ 82. Navarro College terminated Plaintiff. *Id.*

As a result of the foregoing, Plaintiff brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Compl. ¶ 2. Plaintiff brings claims for national origin and sex discrimination and retaliation under Title VII. *Id.* ¶¶ 85-93. Plaintiff also brings claims for discrimination and retaliation under Section 1981. *Id.* ¶¶ 94-104. Finally, Plaintiff brings a tort claim for tortious interference with a contract. *Id.* ¶¶ 105-08. Defendants moved to dismiss all of Plaintiff's claims.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must accept well-pleaded facts as true and view them in the light most

favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (citation omitted). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). It only determines whether the plaintiff has stated a claim upon which relief can be granted. *See id.*

### III. ANALYSIS

Below, the Court briefly acknowledges the parties' agreement that the Police Department should be dismissed from this case. Moving to the remaining Defendants' arguments, the Court first examines their statute of limitations challenge. Then, the Court considers whether Plaintiff's claims against Johnson survive dismissal. The Court concludes by evaluating the City's contention that Plaintiff fails to state a claim for discrimination, retaliation, and tortious interference with a contract.

### A. Corsicana Police Department

Defendants move to dismiss Plaintiff's claims against the Police Department on the ground that the Police Department is a nonjural entity. Mot. ¶ 2. Plaintiff agrees that dismissal of his claims against the Police Department is proper. Resp. 2. Therefore, the Court grants Defendants' Motion with respect to all claims asserted against the Police Department.

6

### B. Statute of Limitations

The remaining Defendants argue that the Court must dismiss Plaintiff's claims against them because Plaintiff failed to bring suit within 90 days after receiving a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). Mot. ¶¶ 7-8. Because Defendants rely on the wrong document to make their argument, the Court disagrees.

Before pursuing a Title VII claim in federal court, a plaintiff must exhaust his administrative remedies. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Id.* at 379 (citation omitted). Then, the plaintiff must file suit within ninety days after receiving the right to sue letter from the EEOC. *Id.* (citation omitted). According to Defendants, Plaintiff received his right to sue letter on December 11, 2023—116 days before Plaintiff filed this lawsuit. Mot. ¶ 8; *see also* Mot., Ex. A [ECF No. 10]. But the document characterized by Defendants as an EEOC right to sue letter is in fact a Texas Workforce Commission Letter of Notice of Right to File Civil Action. *See* Ex. A at 2-8. Receipt of a letter from the Texas Workforce Commission does not trigger the ninety-day filing period. *Vielma v. Eureka Co.*, 218 F.3d 458, 466 (5th Cir. 2000); *Jenkins v. Oak Farms Dairy*, No. 3:05-CV-0991-P, 2005 WL 8158544, at *2 (N.D. Tex. Sept. 28, 2005). Instead, "the EEOC letter is 'the exclusive mechanism for commencing the federal filing period.'" *Ukpong v. Int'l Leadership of Tex.*, No. 21-11111, 2022 WL 6935140, at *3 (5th Cir. Oct. 12, 2022) (quoting *Vielma*, 218 F.3d at 466). And the EEOC issued its right to sue letter to Plaintiff on January 8, 2024—88 days before Plaintiff filed suit. *See* Resp., Ex. A [ECF No. 11-1]. Plaintiff timely filed this lawsuit.

### C. Chief of Police Robert Johnson

Plaintiff brings Title VII, Section 1981, and tortious interference with a contract claims against Johnson. Defendants move to dismiss each claim, arguing that Johnson is entitled to qualified immunity and that Plaintiff fails to state a claim against him. Mot. ¶¶ 3-6. Because the Court determines that there are threshold issues that must be addressed with respect to Plaintiff's claims against Johnson, the Court dismisses these claims without reaching Johnson's qualified immunity or Rule 12(b)(6) arguments.

#### i. Title VII

"[R]elief under Title VII is only available against an employer, not an individual supervisor . . . ." *Umoren v. Plano Indep. Sch. Dist.*, 457 F. App'x 422, 425 (5th Cir. 2012) (citation omitted); *see also Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities." (citation omitted)). As such, a district court must dismiss Title VII claims against individuals. *Sibley v. Touro LCMC Health*, No. 24-30189, 2024 WL 5118489, at *4 n.4 (5th Cir. Dec. 16, 2024) (citation omitted). Accordingly, the Court dismisses Plaintiff's Title VII claims against Johnson.

#### ii. Section 1981

It is unclear from the Complaint whether Plaintiff sues Johnson under Section 1981 in his official capacity, his individual capacity, or both. To the extent Plaintiff brings Section 1981 claims against Johnson in his individual capacity, Plaintiff has not pleaded those claims correctly because he did not assert them through 42 U.S.C. § 1983. "The express action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Montgomery-Smith v. George*, 810 F. App'x 252,

8

256 (5th Cir. 2020) (cleaned up). Johnson is a state actor because he is a state employee. *See id.* (citation omitted). Plaintiff's Complaint does not mention Section 1983, much less attempt to satisfy the standard for pleading liability pursuant to the statute. Because Plaintiff "has failed to invoke the *only* remedy available to him for the claimed deprivation of his § 1981 rights," he has "essentially failed to state a claim." *Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also Zamora v. City of Houston*, No. 4:07-CV-4510, 2008 WL 3852416, at *3 (S.D. Tex. Aug. 15, 2008) (dismissing Section 1981 claim and holding that "[b]ecause Plaintiffs bring suit against a local government entity, they may only assert a cause of action under § 1983" (citation omitted)).

To the extent Plaintiff sues Johnson in his official capacity, such claims are duplicative of Plaintiff's claims against the City and must be dismissed. *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was . . . correct in dismissing the allegations against all of the [employees] in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves." (citation omitted)); *Lewis v. Pugh*, 289 F. App'x 767, 771 (5th Cir. 2008) (concluding that Section 1983 claims against a police chief in his official capacity "merge with" claims against the municipality).

For the foregoing reasons, the Court dismisses Plaintiff's Section 1981 claims against Johnson in his individual and official capacities.

### iii. Tortious Interference with a Contract

Tortious interference "falls within the scope of the Texas Tort Claims Act [('TTCA')]." *Wilkerson v. Univ. of N. Tex. ex rel. Bd. of Regents*, 878 F.3d 147, 158 (5th Cir. 2017) (citation omitted). "The [TTCA] provides a limited waiver of immunity for certain suits against governmental entities . . . ." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655

9

(Tex. 2008) (citing TEX. CIV. PRAC. & REM. CODE § 101.023). The TTCA's election of remedies provision requires a plaintiff to elect "between suing a governmental unit and suing an employee of that unit." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462 (5th Cir. 2010) (citing TEX. CIV. PRAC. & REM. CODE § 101.106). But "recovery against an individual employee is barred and may be sought against the governmental unit only . . . when suit is filed against an employee whose conduct was within the scope of his or her employment and the suit could have been brought against the governmental unit." *Garcia*, 253 S.W.3d at 657 (citing TEX. CIV. PRAC. & REM. CODE § 101.106(f)); *see also Wilkerson*, 878 F.3d at 159 ("When it applies, § 101.106(f) mandates plaintiffs to pursue lawsuits against governmental units rather than their employees." (cleaned up)).

Plaintiff has not made the requisite election, as his tortious interference with a contract claim is asserted against both Johnson and the City. *See* Compl. ¶ 105. However, Defendants' analysis of the Texas Tort Claims Act, to the extent such analysis exists, is relegated to a single, vague line about sovereign immunity in their Reply. *See* Reply ¶ 16. The Court grants Defendants' Motion as to Plaintiff's tortious interference claim against Johnson; however, the Court will allow Plaintiff to amend this claim to clarify the defendant against which it is brought. And any subsequent motion to dismiss must meaningfully address the TTCA, to the extent it remains relevant.

\*      \*      \*

For the reasons set forth above, the Court determines that Plaintiff has not adequately pleaded his claims against Johnson. Because none of the claims against Johnson are cognizable under the applicable law, the Court does not reach Johnson's qualified immunity or Rule 12(b)(6) arguments at this time.

### D. City of Corsicana

Plaintiff also brings Section 1981, Title VII, and tortious interference with a contract claims against the City. The City—the only remaining defendant at this time—moves to dismiss all of Plaintiff's causes of action against it for failure to state a claim. Mot. ¶¶ 9-22. The Court takes each claim in turn.

#### i. Section 1981

Section 1981 prohibits discrimination on the basis of race in making and enforcing contracts.[2] *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (citing 42 U.S.C. § 1981(a)). The City does not address Plaintiff's Section 1981 claims in its Motion, and Plaintiff does not mention these claims in his Response. But as the Court previously noted, *see supra* § III.C.ii., Section 1981 claims against state actors must be brought pursuant to Section 1983. If Plaintiff intends to pursue these claims, he must adequately plead them in any amended complaint.

#### ii. Title VII

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[] or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can bring claims for discrimination based on multiple theories, including disparate treatment and hostile work environment. Title VII also prohibits retaliation. *Id.* § 2000e-3(a). Plaintiff brings claims for sex discrimination[3] and

---

[2] In connection with his Section 1981 discrimination claim, Plaintiff alleges that the City discriminated against him "based on his sex, race, and national origin." Compl. ¶ 98. Sex discrimination claims are "not cognizable under Section 1981" and "must instead be brought under Title VII." *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 490 n.4 (5th Cir. 2011) (citing, among other sources, *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 344-45 (5th Cir. 1981)).

[3] "[D]iscrimination on the basis of sexual orientation or gender identity is a form of sex discrimination under Title VII." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 598 (5th Cir. 2021) (citing *Bostock v. Clayton County*, 590 U.S. 644 (2020)).

national origin discrimination under disparate treatment and hostile work environment theories. *See* Compl. ¶¶ 2, 87. Plaintiff also asserts a retaliation claim. *Id.* ¶ 91. The City moves to dismiss each cause of action.

### a. Disparate Treatment

At the pleading stage, a plaintiff bringing a disparate treatment claim must "plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citation omitted). There are two ultimate elements: (1) an adverse employment action, (2) taken against a plaintiff because of his protected class. *Id.* at 767 (citation omitted). In its Motion, the City does not specifically address Plaintiff's claim for sex-based disparate treatment; however, the Court will briefly address it below for the sake of completeness. With respect to Plaintiff's national origin claim, the City contends that Plaintiff has not plausibly alleged either ultimate element. Mot. ¶ 14.

As to the first element, the City argues that Plaintiff fails to allege an adverse employment action because he doesn't point to an "ultimate employment decision." Reply ¶ 4; *see also* Mot. ¶ 14 & n.17. But this argument ignores the change in the law effected by *Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023). In *Hamilton*, the Fifth Circuit held: "To adequately plead an adverse employment action, plaintiffs need not allege discrimination with respect to an 'ultimate employment decision.' Instead, a plaintiff need only show that she was discriminated against . . . with respect to hiring, firing, compensation, or the 'terms, conditions, or privileges of employment[.]'" *Id.* at 506 (citation omitted). A plaintiff plausibly pleads an adverse employment action when he pleads "adversity" and "a non-*de minimis* injury." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430 (5th Cir. 2023) (citation omitted).

With respect to Plaintiff's sex discrimination claim, applying the proper legal standards and the facial plausibility jurisprudence of *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and accepting all well-pleaded facts as true, and viewing them in the light most favorable to Plaintiff, the Court concludes that Plaintiff's Complaint pleads sufficient facts to plausibly allege both an adverse employment action and that the City discriminated against him because of his sex.[4]

But Plaintiff has not plausibly alleged that any adverse actions were taken against him because he is Hispanic. The Complaint includes five national origin-based allegations. First, Plaintiff states that other employees "were saying they needed to be careful around Plaintiff when Plaintiff worked out at the gym because he was a gay Hispanic male." Compl. ¶ 30. Second, Plaintiff repeatedly alleges that he "felt that he was being singled out and being targeted, harassed, humiliated[,] and treated differently because he was a gay Hispanic male." *Id.* ¶¶ 44, 48, 52-53, 63, 75, 77. Third, Plaintiff contends that Nanny made "racist comments" about third parties in front of Plaintiff and other officers. *Id.* ¶ 49; Ex. 1 at 6-7. Fourth, Plaintiff claims that Nanny frequently ticketed Hispanic individuals. Compl. ¶¶ 58, 78. Fifth, Plaintiff pleads that other, unidentified employees were treated better than him. *See id.* ¶¶ 26, 46, 53.

None of these allegations suffice. The second statement is conclusory and does not include any supporting facts. *See Givens v. Eddie Deen & Co. Catering*, No. 3:10-CV-01164-L, 2010 WL 5817658, at *3 (N.D. Tex. Dec. 30, 2010) ("Plaintiff's 'feelings' that he was the victim of racial discrimination, however strong, are not facts."). The third and fourth allegations are unsupported

---

[4] The City argues that Plaintiff has not pleaded that he was treated less favorably than a similarly situated employee outside his protected class. Mot. ¶ 14; Reply ¶¶ 3, 7-8. But such a showing is not required to defeat a motion to dismiss. *See Cicalese*, 924 F.3d at 766 ("A district court . . . errs by requiring a showing of each prong of the prima facie test for disparate treatment at the pleading stage." (cleaned up)); *Jenkins v. City of Dallas*, 717 F. Supp. 3d 528, 537 (N.D. Tex. 2024) (stating that allegations that "similarly situated employees outside the plaintiff's protected class were treated differently . . . are not necessary" to survive a Rule 12(b)(6) motion (citation omitted)).

by allegations of discrimination against Plaintiff. *See, e.g., Stinson v. McGinnis*, No. 3:23-CV-810-M-BN, 2024 WL 4152703, at *13 (N.D. Tex. Aug. 16, 2024) ("[W]here discrimination of others similarly situated to the plaintiff has been considered, the disparate treatment claim was also supported by assertions . . . of similar discrimination 'targeting the plaintiff.'" (citation omitted)), *report and recommendation adopted by* 2024 WL 4151175 (N.D. Tex. Sept. 11, 2024). The fifth category provides no support for Plaintiff's claims, as these allegations do not include any information about the other employees' national origins. And standing alone, the first allegation does not nudge Plaintiff's claim of national origin discrimination "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

The Court separately addresses Defendants' argument that "[i]t is highly questionable that [Plaintiff] himself can be classified as a racial minority" because "[h]e is half-Hispanic, yet neither his surname nor his appearance suggest this."[5] Mot. 7 n.18. The Court deems such statements on the part of Defendants, and their counsel, to be unprofessional, facially offensive, and legally irrelevant. The Court has not factored this absurd argument into its analysis.

For the foregoing reasons, Plaintiff's sex discrimination claim survives dismissal, but his national origin discrimination claim, as currently pleaded, does not.

### b. Harassment/Hostile Work Environment

Plaintiff brings hostile work environment claims based on both sex and national origin. The Court first considers the sex-based claim. The Fifth Circuit has established a two-step analysis for evaluating same-sex harassment claims under Title VII. *Russell v. Univ. of Tex. of the Permian Basin*, 234 F. App'x 195, 201 (5th Cir. 2007) (citation omitted). First, the plaintiff must plausibly allege that the harassment was because of sex. *Id.* (citation omitted). Second, the plaintiff's

---

[5] It may be noted that the undersigned is the first Asian American United States district judge to serve in the Fifth Circuit, yet "neither [her] surname nor [her] appearance suggest this."

allegations must meet the standards for, as relevant here, a hostile work environment claim. *Id.* The City challenges Plaintiff's pleadings at both steps.

The City first argues that Plaintiff has not pleaded harassment because of sex because Plaintiff has not alleged "one of three categorical prohibitions."[6] Mot. ¶ 12 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998)). But the Fifth Circuit has held that "the *Oncale* categories are illustrative, not exhaustive, in nature." *Boh Bros. Constr. Co.*, 731 F.3d at 455-56 (citation omitted). A plaintiff may also establish a claim by, for example, alleging "sex-stereotyping." *Id.* at 456.

Next, the City contends that Plaintiff has not adequately alleged a hostile work environment. Mot. ¶¶ 15-18. To state a claim for hostile work environment, Plaintiff must plead that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) the harassment affected a term, condition, or privilege of employment; and (5) the City knew or should have known of the harassment and failed to take prompt remedial action. *English v. Perdue*, 777 F. App'x 94, 98 (5th Cir. 2019) (citation omitted).

Applying the legal standards set forth above and the facial plausibility jurisprudence of *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, the Court concludes that Plaintiff has stated a plausible claim for hostile work environment based on sex.

---

[6] The "three categorical prohibitions" are the "three evidentiary paths for plaintiffs to" show discrimination because of sex "in the context of a same-sex harassment claim." *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 455 (5th Cir. 2013) (citation omitted). Those paths are: (1) "a plaintiff may show that the harasser was homosexual and motivated by sexual desire"; (2) "a plaintiff may show that the harassment was framed in such sex-specific and derogatory terms . . . as to make it clear that the harasser was motivated by general hostility to the presence of a particular gender in the workplace"; and (3) "a plaintiff may offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* (cleaned up).

Turning to Plaintiff's national origin-based hostile work environment claim, the Court concludes that Plaintiff has not adequately alleged harassment based on his national origin for the reasons stated above. *See supra* § III.D.ii.a.

In sum, Plaintiff has stated a claim for hostile work environment based on sex, and the Court denies the City's Motion with respect to this claim. Plaintiff has not stated a claim for hostile work environment based on national origin; therefore, the Court grants the City's Motion with respect to this claim.

### c. Retaliation

To plead a retaliation claim, Plaintiff must adequately allege that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021) (citation omitted). The City contends that Plaintiff has not alleged that he engaged in any protected activity and that there is no causal link between any protected activity and an adverse employment action. Mot. ¶ 20.

Applying the facial plausibility jurisprudence of *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, the Court concludes that Plaintiff has stated a facially plausible retaliation claim. Therefore, the Court denies the Motion as to Plaintiff's retaliation claim against the City.

However, the Court briefly addresses Plaintiff's non-selection for the Detective position, an action on which Plaintiff relies heavily in both his Complaint and Response. In 2022, Plaintiff applied for a vacant Detective position but was not selected. Compl. ¶¶ 73-74. Defendants' "selecting officials" told Plaintiff that he was not selected "because of complaints that Plaintiff had made about the Police Department." *Id.* ¶ 75. Although Plaintiff refers to the Detective

16

position as a "promotion" in his Response, Resp. 10, this allegation appears nowhere in his Complaint. Nor do any other allegations about how the transfer may have impacted Plaintiff's "pay, promotional opportunities, working conditions, and other objective factors." *Sabzevari v. Reliable Life Ins. Co.*, 264 F. App'x 392, 396 (5th Cir. 2008); *see also Griffin v. Citgo Petroleum Corp.*, 344 F. App'x 866, 868 (5th Cir. 2009) ("[A]ny purported denial of a lateral transfer did not affect [the plaintiff's] employment status, benefits, or responsibilities, meaning that it did not constitute a materially adverse employment action for a claim of retaliation." (citation omitted)). If Plaintiff wishes to rely on his non-selection for the Detective position going forward, he must more adequately replead those allegations in any amended complaint.

### iii. Tortious Interference with a Contract

Plaintiff alleges that Defendants tortiously interfered with his employment with Navarro College when they informed Navarro College of Plaintiff's complaints against the Police Department. Compl. ¶¶ 105-07. The City moves to dismiss this claim on the ground that it is preempted by Title VII. Mot. ¶ 22.

The City relies on the Supreme Court's decision in *Brown v. General Services Administration*, 425 U.S. 820 (1976), for the proposition that Title VII is the exclusive, preemptive administrative and judicial scheme for the redress of employment discrimination. Mot. ¶ 22. But *Brown* merely held that Title VII provides the exclusive remedy "for claims of discrimination in *federal* employment." 425 U.S. at 835 (emphasis added). The remaining cases cited by the City are similarly limited.[7] *See, e.g., Rowe v. Sullivan*, 967 F.2d 186, 189 (5th Cir. 1992) ("Title VII is

---

[7] The City cites to one case, *Watkins v. Texas Department of Criminal Justice*, 269 F. App'x 457 (5th Cir. 2008), that is not limited to federal employment but is nevertheless inapposite. Mot. ¶ 22 n.27. In *Watkins*, the Fifth Circuit, relying on a Texas Supreme Court case, held that an intentional infliction of emotional distress claim was preempted by Title VII. *Id.* at 464-65. However, that decision was premised on the unique nature of intentional infliction of emotional distress as a "gap-filling tort." *Id.* (cleaned up).

the exclusive judicial remedy for claims of discrimination in *federal* employment." (emphasis added) (citation omitted)). The City has not cited any binding precedent extending this holding to non-federal employment. *See, e.g., Johnson v. Blue Cross/Blue Shield of Tex.*, 375 F. Supp. 2d 545, 549 (N.D. Tex. 2005) (declining to extend Title VII preemption precedent outside of the federal employer context). Therefore, the Court denies the Motion as to Plaintiff's tortious interference claim against the City.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Rule 12(b)(6) Motion to Dismiss [ECF No. 9]. The Court **GRANTS** the Motion with respect to Plaintiff's claims against the Police Department, Plaintiff's Title VII claims against Johnson, Plaintiff's Section 1981 claims against Johnson in his official capacity, and Plaintiff's Section 1981 sex discrimination claim. Those claims are **DISMISSED WITH PREJUDICE**. The Court also **GRANTS** the Motion with respect to Plaintiff's Section 1981 claims against Johnson in his individual capacity, Plaintiff's tortious interference with a contract claim against Johnson, and Plaintiff's national origin-, race-, and retaliation-based Section 1981 and national origin-based Title VII claims against the City. Those claims are **DISMISSED WITHOUT PREJUDICE**. The Court **DENIES** the Motion with respect to Plaintiff's claims against the City for sex discrimination and retaliation under Title VII and for tortious interference with a contract.

Given the Federal Rules of Civil Procedure's liberal policy of allowing amendments to pleadings, the Court **GRANTS** Plaintiff leave to amend his Complaint to address those claims that the Court dismisses without prejudice. Plaintiff must file an amended complaint by **March 10, 2025**. If an amended complaint is not filed within such time, such claims will be dismissed with prejudice.

**SO ORDERED.**

SIGNED February 19, 2025.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**