# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JARRETT GIRARD | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-CV-0849-S |
| | § | |
| CITY OF CORSICANA | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant City of Corsicana's Motion for Summary Judgment ("Motion") [ECF No. 48]. The Court has reviewed the Motion, Defendant's Brief in Support of the Motion ("Defendant's Brief") [ECF No. 49], Plaintiff Jarrett Girard's Response in Opposition to the Motion ("Response") [ECF No. 53], Plaintiff's Supplemental Briefing in Opposition to Motion for Summary Judgment and Alternative Motion for Leave to Amend ("Plaintiff's Supplemental Brief") [ECF No. 66], Defendant's Supplemental Brief [ECF No. 68], the summary judgment evidence, and the applicable law. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I. BACKGROUND

### *A. Plaintiff's Employment with Defendant*

Plaintiff Jarrett Girard, who identifies as a "Hispanic gay male," began working for Defendant City of Corsicana as a police officer in 2015. Pl.'s First Am. Compl. ("Amended Complaint") [ECF No. 29] ¶ 9; App. to Mot. ("Defendant's Appendix") [ECF No. 50] Ex. A at 2; Pl.'s App. in Supp. of Resp. ("Plaintiff's Appendix") [ECF No. 56] Ex. A at 5. During the time period relevant to this lawsuit, Plaintiff's supervisor was Sergeant Mark Nanny, *see* Pl.'s App., Ex. F, at 36 (41:7-13), and the Chief of Police was Robert Johnson, Def.'s App., Ex. A, at 2.

Plaintiff identifies many incidents that occurred during his employment with Defendant, which form the basis of most of his claims. First, he cites a set of actions related to sexual

orientation. In 2018, a "jailer" asked about "[Plaintiff's] sexuality" on social media. Def.'s App., Ex. D, at 126-27. That same year, Chief Johnson's son "asked dispatchers about Plaintiff's sexuality in the workplace." *Id.* at 127; Pl.'s App., Ex. J, at 86-87 (194:12-195:8). In 2019, a lieutenant "mocked Plaintiff's jeans" by insinuating that they were women's jeans. Def.'s App., Ex. D, at 127; *see also* Def.'s App., Ex. A, at 2; Pl.'s App., Ex. J, at 90 (198:10-17). Also in 2019, "[u]nknown officers" "warned others to 'watch out' around Plaintiff at the gym because he is gay." Def.'s App., Ex. D, at 127; Pl.'s App., Ex. J, at 91 (199:6-25). That same year, a police captain and another employee "referred to a transitioning IT employee as a 'freak' and 'it'" and did not let that employee use the bathroom. Def.'s App., Ex. D, at 127; *see also* Def.'s App., Ex. A, at 2-3; Pl.'s App., Ex. J, at 92 (200:12-20). In 2020, Lieutenant Todd Morris and Sergeant Nanny, discussing COVID-19 quarantine protocols, said that Plaintiff's husband was not a member of Plaintiff's family. Def.'s App., Ex. D, at 128; *see also* Def.'s App., Ex. A, at 2. Finally, in 2021, a sergeant questioned other staff members "about Plaintiff's sexuality." Def.'s App., Ex. D, at 128.

Second, Plaintiff touches on comments made about other individuals' race or national origin. He states that between 2020 and 2022, Sergeant Nanny made "racist comments" about "foreigners" and Hispanic people. *Id.* at 129; Pl.'s App., Ex. F, at 28-35, 37-38, 39-40, 41-42, 45-46 (33:2-40:11, 42:22-43:18, 44:24-45:11, 46:25-47:13, 73:1-74:5). Specifically, Sergeant Nanny "may have said" "[f]*** them foreigners." Pl.'s App., Ex. F, at 44-45 (56:14-23, 73:1-4). He also "may have made th[e] statement" that he didn't "take complaints from illegals." *Id.* at 45 (73:5-10).

Third, Plaintiff points to several other incidents not directly connected to national origin or sex that he alleges were discriminatory or retaliatory. In 2019, Plaintiff's personal vehicle was set on fire by a suspect. Def.'s App., Ex. D, at 127; Pl.'s App., Ex. G, at 55. Plaintiff claims that Defendant "provided no assistance." Def.'s App., Ex. D, at 127. Defendant disputes this

characterization and submitted evidence that "[a]n investigation was conducted" but that Plaintiff refused to participate. Def.'s App., Ex. A, at 3; *see also* Pl.'s App., Ex. G, at 55 ("Chief Johnson was at my doorstep within hours and walked the streets with me in an attempt to locate any evidence . . . ."). The following year, Plaintiff posted about the incident on social media, and Chief Johnson instructed a detective to ask Plaintiff to remove the post. *Id.*; Def.'s App., Ex. D, at 127. Plaintiff asked the detective "if [he] had done anything wrong or violated any Policies," and the detective "confirmed that [he] did not." Pl.'s App., Ex. G, at 55.

Also in 2020, a lieutenant "ordered Plaintiff out of a vehicle following a disagreement." Def.'s App., Ex. D, at 128. In 2021, Plaintiff was ordered to remove social media posts. *Id.*; *see also* Def.'s App, Ex. A, at 3 (describing one of the posts as "unprofessional, demeaning, and embarrassing to the [police] department"). After the City Manager saw one of the posts at issue, he or she asked Chief Johnson to consider terminating Plaintiff's employment. Def.'s App., Ex. A, at 4. Chief Johnson opted instead to issue a verbal counseling. *Id.*

In February 2022, while Plaintiff was on patrol, he was found parked in one location—where it was not possible to monitor traffic with a radar device—for over three hours. *Id.* Plaintiff received some form of verbal counseling and contends that "others were not" disciplined for the same conduct. Def.'s App., Ex. D, at 129; *see also* Def.'s App., Ex. A, at 4 (stating that Plaintiff was not disciplined and was merely "told to get back to work"). The following month, Plaintiff called in sick but did not inform his supervisor. Def.'s App., Ex. A, at 6. According to Defendant, Sergeant Nanny then instituted a new policy requiring all police officers on his shift to submit a sick leave form in connection with calling in sick. *Id.*; Def.'s App., Ex. D, at 129. According to Plaintiff, Sergeant Nanny asked him to submit a sick leave form despite not asking others to do the same and then later made the form a departmental policy. Def.'s App., Ex. D, at 129.

Sometime in mid-March 2022, Plaintiff met with Lieutenant Morris and Sergeant Nanny about "being treated differently than other officers," Am. Compl. ¶ 52, but claimed that the meeting "yielded no corrective action," Def.'s App., Ex. D, at 129. On or around March 28, 2022, Plaintiff submitted an internal complaint regarding discrimination, "being treated unfairly," and "a hostile/unsafe work environment." Pl.'s App., Ex. G, at 55-66; Am. Compl. ¶ 54. Plaintiff's complaint detailed instances of "[r]acist remarks and comments," "an unfair and uneven work environment," retaliation, and being "discriminated against . . . for being gay." Pl.'s App., Ex. G, at 59, 62, 65. Defendant retained a law firm to investigate the complaint. Def.'s App., Ex. A, at 4-5. Defendant put Plaintiff on administrative leave with pay until the investigation was completed. *Id.* at 5. Although most of the issues were not sustained, the investigation sustained one complaint regarding "racist remarks" made by Sergeant Nanny. *Id.*

Upon Plaintiff's return from leave, Defendant gave him a choice of available assignments. *Id.* Two options were assignment to a night shift or to Community Services. *Id.* The third option, which was the only daytime shift available, would require Plaintiff to continue reporting to Sergeant Nanny. *Id.* Plaintiff chose the third option, the daytime shift. *Id.*

On July 6, 2022, Plaintiff made another internal complaint via email about not being treated "fairly/equally." Pl.'s App., Ex. K, at 94. In this email, Plaintiff did not identify a basis for the perceived unfair treatment. Plaintiff stated that he "d[id] not need a response" and was "just documenting for [his] records." *Id.* Plaintiff followed up the next day with "a formal complaint of harassment/retaliation" against Lieutenant Morris regarding the July 6 email. *Id.* at 95. Plaintiff also referenced a meeting with Sergeant Nanny and a training advisor, during which the advisor stated that he wanted Plaintiff and Sergeant Nanny to be able to work together despite what

Plaintiff describes as the latter's "racist behavior/comments." *Id.* Defendant's Director of Human Resources investigated the complaint. Def.'s App., Ex. A, at 4.

In July 2022, Plaintiff applied for an open position as a detective in the Criminal Investigation Division. *Id.* at 6; Def.'s App., Ex. D, at 129. Officer Alexandra Holden also applied. Def.'s App., Ex. A, at 6. Ultimately, Defendant selected Officer Holden instead of Plaintiff. *Id.* The same month, Plaintiff asked to attend officer training in Galveston, Texas, and Chief Johnson denied the request. *Id.* at 7; *see also* Def.'s App., Ex. D, at 129-30. Chief Johnson states that he denied the request for "budgetary reasons." Def.'s App., Ex. A, at 7.

On September 13, 2022, Plaintiff submitted a letter of resignation to Defendant. *Id.* at 2, 7. Chief Johnson completed an "F-5 report" indicating that Plaintiff separated from employment with an honorable discharge. *Id.* at 7; Def.'s App., Ex. B, at 97 (57:18-20).

***B. Plaintiff's Employment with Navarro College***

After leaving Defendant's employ, Plaintiff began working as a police officer at Navarro College. Def.'s App., Ex. A, at 7. Several months into Plaintiff's new job, Chief Johnson learned that Plaintiff had posted a body-worn camera video from his time working for Defendant on social media. *Id.* Chief Johnson felt that the post was "highly critical of the Corsicana Police Department," and he states that posting unauthorized body-worn camera videos is a criminal offense. *Id.* In late March of 2023, Chief Johnson called Chief Hank Bailey at Navarro College and asked him to discuss the matter with Plaintiff. *Id.*; Def.'s App., Ex. B, at 100 (65:2-9).

Around the time of Chief Johnson's call, Plaintiff sent a picture of a positive COVID-19 test to a sergeant at Navarro College. Def.'s App., Ex. C, at 107-08 (10:21-11:4, 11:13-15). Plaintiff stated that he was sick and had COVID-19. *Id.* at 108 (11:3-4). Navarro College examined the photograph's metadata and determined that the photograph had been taken in January 2022.

*Id.* at 108-09 (11:5-10, 11:19-12:23). Plaintiff did not provide an explanation for submitting the outdated photograph. *Id.* at 117 (27:17-19). Chief Bailey testified that Plaintiff's dishonesty was a violation of Navarro College's policies and grounds for termination. *Id.* at 110 (13:10-21). Chief Bailey terminated Plaintiff. Def.'s App., Ex. B, at 100 (65:2-7); Def.'s App., Ex. C, at 107-08 (10:19-11:1). Chief Bailey testified that Plaintiff's termination was unrelated to Chief Bailey's conversation with Chief Johnson a few days prior. Def.'s App., Ex. C, at 114-15 (24:23-25:1). Chief Bailey completed an F-5 report reflecting a "general discharge." *Id.* at 110-11 (13:22-24, 16:8-15). Plaintiff has applied to "countless" police departments since Navarro College terminated his employment, but he has not found a new job. Def.'s App., Ex. B, at 96 (56:5-17).

### *C. The Instant Lawsuit*

As a result of the foregoing, Plaintiff filed suit. Defendant moved to dismiss Plaintiff's Original Complaint. *See* ECF No. 9. The Court granted in part and denied in part that motion. *See* Mem. Op. and Order ("Dismissal Opinion") [ECF No. 28]. As relevant here, the Court concluded that: (1) Plaintiff did not adequately plead his 42 U.S.C. § 1981 claims through 42 U.S.C. § 1983, as required; (2) Plaintiff plausibly alleged sex discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; (3) Plaintiff did not sufficiently plead a Title VII national origin discrimination claim because he did not allege that any adverse actions were taken against him because he is Hispanic; and (4) Plaintiff's tortious interference with contract claim was not preempted by Title VII. *See* Dismissal Op. 11-18.

Plaintiff subsequently filed his Amended Complaint. Plaintiff asserts claims for national origin discrimination,[1] sex discrimination, and retaliation under Title VII, retaliation pursuant to

[1] The parties alternatively refer to Plaintiff's claim as a race discrimination or national origin discrimination claim. For consistency, the Court will use the latter throughout this Memorandum Opinion and Order.

Section 1981, and tortious interference with contract under Texas state law.[2] Am. Compl. ¶¶ 83-101.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) showing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[C]onclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d

---

[2] Defendant moves for summary judgment on a constructive discharge claim. Def.'s Br. ¶¶ 49-52. Plaintiff did not plead such a claim, nor did he defend it in his Response. Therefore, the Court concludes that there is no constructive discharge claim at issue in this case.

851, 857 (5th Cir. 2010). The Court resolves factual controversies in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## III. ANALYSIS

Defendant moves for summary judgment on all of Plaintiff's claims.[3] Mot. ¶ 2. Plaintiff contends that his causes of action should proceed to trial and moves to strike portions of Defendant's summary judgment evidence. Resp. 1, 14. In the alternative, Plaintiff seeks leave to amend his Section 1981 retaliation claim. Pl.'s Suppl. Br. 7-9.

### *A. Plaintiff's Evidentiary Objection*

Plaintiff begins his Response by objecting to 86 pages of Defendant's Appendix on the ground that the evidence contained therein is not authenticated. Resp. 1. Despite his objection, Plaintiff relies on this evidence in opposing summary judgment. *See id.* at 2, 9. Even if the Court did not consider the challenged evidence in support of either party's position, it would reach the same conclusions below. As such, the Court overrules Plaintiff's objection as moot.

### *B. Defendant's Motion for Summary Judgment*

#### *i. Title VII Discrimination*

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can bring

[3] Plaintiff argues that Defendant did not seek summary judgment on his national origin-based claims and that Defendant is seeking dismissal too late. Resp. 4-5. The Court disagrees. Defendant sought summary judgment on Plaintiff's national origin claims. *See, e.g.*, Mot. ¶ 2; Def.'s Br. ¶ 2. And Defendant's argument that Plaintiff failed to state a claim "is the functional equivalent of the failure to raise a genuine issue of material fact." *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992) (citation and internal quotation marks omitted).

claims for discrimination based on multiple theories. Here, Plaintiff asserts both disparate treatment and hostile work environment theories.

*a. Disparate Treatment*

Plaintiff provides no direct evidence of discrimination, so Plaintiff must "rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis." *Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 332 (5th Cir. 2019). Under this framework, Plaintiff must first establish a prima facie case by showing that: (1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees outside his protected class. *Woods v. STS Servs., L.L.C.*, 164 F.4th 394, 397 (5th Cir. 2026) (citation omitted); *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (citation omitted). Once Plaintiff establishes his prima facie case, the burden "then shifts to [Defendant] to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Alkhawaldeh*, 851 F.3d at 426 (citation omitted). If Defendant does so, "the burden shifts back to [Plaintiff] to demonstrate that [Defendant's] proffered reason is a pretext for discrimination." *Id.* (citation and internal quotation marks omitted).

Plaintiff has not provided evidence supporting the fourth element of his prima facie case, which requires that a similarly situated employee outside of Plaintiff's protected class was treated more favorably than him. *See Bravo v. Dall. Indep. Sch. Dist.*, 177 F.4th 604, 607 (5th Cir. 2026) ("To survive summary judgment, [the plaintiff] must offer evidence that he was treated less favorably than a similarly situated employee who was not a member of his protected class." (citation omitted)). The only potential comparator identified by Plaintiff is Officer Holden, who got the Detective job for which Plaintiff applied. Resp. 6. As an individual who was "not Hispanic" and "not homosexual," Pl.'s App., Ex. Q, at 127, Officer Holden is outside of both of Plaintiff's

protected classes. But Plaintiff has not established that Officer Holden was similarly situated because he offers inadequate evidence of her qualifications, experience, work and disciplinary history, or other information sufficient to show that she was similarly situated to Plaintiff. *See Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022); *Noble v. Lear Siegler Servs., Inc.*, 554 F. App'x 275, 276 (5th Cir. 2014). Plaintiff notes some differences in their work history and positions but does not explain how he and Officer Holden are similarly situated. *See, e.g.*, Resp. 6. Because there is no factual dispute regarding whether Plaintiff and Officer Holden were similarly situated, Plaintiff's national origin- and sex-based disparate treatment claims fail.[4]

*b. Hostile Work Environment*

To establish a claim for hostile work environment, Plaintiff must show that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) the harassment affected a term, condition, or privilege of employment; and (5) Defendant knew or should have known of the harassment and failed to take prompt remedial action. *English v. Perdue*, 777 F. App'x 94, 98 (5th Cir. 2019) (citation omitted). Plaintiff asserts harassment based on both his national origin and sex. Am. Compl. ¶¶ 17, 85.

*1. National Origin*

In the Dismissal Opinion, the Court dismissed Plaintiff's national origin-based hostile work environment claim because Plaintiff did not allege harassment based on his membership in a protected group (i.e., based on being Hispanic). Dismissal Op. 13-14, 16. Plaintiff has not cured the deficiencies previously identified by the Court. Again, he largely focuses on his feelings that

[4] With respect to the national origin discrimination claim, Defendant correctly argues that Plaintiff did not address the deficiencies identified by the Court in the Dismissal Opinion. Def.'s Br. ¶ 2. Thus, Defendant is also entitled to summary judgment because Plaintiff has produced no evidence tying any alleged discrimination to his national origin.

he was singled out for being Hispanic. *See, e.g.*, Am. Compl. ¶ 59. And the incidents of harassment he sets forth—and provides summary judgment evidence in support of—revolve almost entirely around his sexual orientation, rather than his race, ethnicity, or national origin. *See, e.g.*, *id.* ¶¶ 18-19, 27-37, 39; Pl.'s App., Ex. J, at 83-92 (191:5-200:24). Finally, by failing to respond to the Motion on this point, Plaintiff has not established that there is a genuine issue of material fact so that a reasonable jury might return a verdict in his favor. Defendant is entitled to summary judgment on Plaintiff's national origin-based hostile work environment claim under Title VII.

*2. Sex*

The Court reaches a different conclusion with respect to Plaintiff's claim for a sex-based hostile work environment. Having reviewed the parties' arguments and evidence, the Court finds that genuine issues of material fact exist such that a reasonable jury might return a verdict in favor of either party. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87. This claim survives summary judgment.

*ii. Title VII Retaliation*

Title VII also prohibits retaliation. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021) (citation omitted). The burden then shifts to Defendant to "articulate a legitimate non-retaliatory reason for the adverse employment action." *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 899-900 (5th Cir. 2025) (citation omitted). If Defendant carries its burden, Plaintiff must demonstrate that the stated reason is "a pretext for retaliation." *Id.* at 900 (citation omitted).

Having reviewed the parties' arguments and evidence, the Court finds that genuine issues of material fact exist such that a reasonable jury might return a verdict in favor of either party with respect to Plaintiff's Title VII retaliation claim. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87. This claim survives summary judgment.[5]

*iii. Section 1981 Retaliation*

Like Title VII, Section 1981 also proscribes retaliation. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008). Defendant moves for summary judgment on Plaintiff's Section 1981 claim on the ground that Plaintiff did not correct deficiencies previously identified by the Court. Def.'s Br. ¶ 48.

*a. Summary Judgment Procedure*

Although Defendant moved for summary judgment on Plaintiff's Section 1981 retaliation claim, neither party adequately briefed municipal liability under 42 U.S.C. § 1983. As such, the Court ordered the parties to provide supplemental summary judgment briefing "limited to the requirements of Section 1983 and whether summary judgment on [Plaintiff's] Section 1981 claim is appropriate in light of those requirements." Order [ECF No. 64] 2. In Plaintiff's Supplemental Brief, he insinuates that any summary judgment ruling from the Court on this issue would be sua sponte and criticizes the Court's Order as "flawed" because it did not provide sufficient notice or permit evidence. Pl.'s Suppl. Br. 2-3.

Plaintiff's argument misses the mark. In the Dismissal Opinion, the Court noted an issue with Plaintiff's Section 1981 claim against Defendant, namely, that it was not brought pursuant to

[5] The Court notes, however, that the only adverse employment action Plaintiff discusses in his Response is the denial of the promotion to the detective position. *See* Resp. 10-12. Plaintiff has abandoned his retaliation claim to the extent it is predicated on any other adverse employment actions. *See Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) ("When a plaintiff fails to defend a claim in response to a . . . summary judgment motion, the claim is deemed abandoned." (citing, among other sources, *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)).

Section 1983. Dismissal Op. 11. Plaintiff did not address this concern in the Amended Complaint. Defendant moved for summary judgment based on Plaintiff's failure to do so: "None of the Original Complaint's allegations sufficed to meet the minimum pleading requirements. No additional allegations are made in [the] Amended Complaint that might cure the first complaint's shortfalls ***and none of the specific deficiencies stated in the [Dismissal] Opinion were addressed***. Thus, Plaintiff has failed to state a §[ ]1981 claim." Def.'s Br. ¶ 48 (emphasis added). This argument is properly made in support of summary judgment. *See Martin v. Lennox Int'l Inc.*, 342 F. App'x 15, 17 (5th Cir. 2009) ("[W]hile 'failure to state a claim usually warrants dismissal under Rule 12(b)(6),' it may also serve as a basis for summary judgment." (quoting *Whalen*, 954 F.2d at 1098)). The Court is not considering dismissal of the Section 1981 claim sua sponte but rather is doing so based on Defendant's Motion.

Regardless, Plaintiff has received more than adequate notice that his claim is subject to dismissal based on his disregard of Section 1983. "If, in the ordinary course of litigation, caution and common sense were not enough to spur [Plaintiff's] counsel to present the requisite evidence for each element of [his] claims," the Court's Dismissal Opinion and Defendant's Brief "should have alerted counsel to the impending ruling." *Jones v. Fam. Dollar Stores of La., Inc.*, 746 F. App'x 348, 352 (5th Cir. 2018). Plaintiff cannot in good faith argue that he has not been given fair notice of the potential for summary judgment on his Section 1981 claim on the basis of Section 1983. Any argument that the Court is considering this claim sua sponte or failed to provide proper notice is tenuous, at best.

*b. Merits*

As Defendant points out in Defendant's Brief, Plaintiff did not correctly assert a Section 1981 claim.[6] And Plaintiff provided no evidence to support municipal liability under Section 1983. Defendant is entitled to summary judgment on this ground alone.

But even if the Court considered the merits of Plaintiff's Section 1981 claim, it would fail. In the Fifth Circuit, the substantive "analysis of . . . claims under § 1981 is identical to the analysis of Title VII claims." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 417 (5th Cir. 2023) (citation omitted). However, Section 1981 "does not provide an independent cause of action against local government entities." *Jones v. City of Hutto*, 154 F.4th 332, 336 (5th Cir. 2025) (citation omitted). Thus, plaintiffs must bring such claims under Section 1983. *Id.* (citation omitted); *see also Williams v. City of Richardson*, No. 3:16-CV-2944-L-BK, 2018 WL 5885540, at *2 (N.D. Tex. Aug. 15, 2018) ("[A] plaintiff 'must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981.'" (quoting *Oden v. Oktibbeha County*, 246 F.3d 458, 463 (5th Cir. 2001)), *report and recommendation adopted by* 2018 WL 4269088 (N.D. Tex. Sept. 7, 2018).

Section 1983 "does not allow municipal governments to be held liable for their employees' actions under a respondeat superior theory." *Jones v. City of Houston*, 756 F. App'x 341, 346 (5th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Instead, "[m]unicipal liability under both § 1981 and § 1983 requires proof of three elements in addition to

[6] Plaintiff correctly notes that the Fifth Circuit does not require plaintiffs to perfectly state the legal theory presented. Pl.'s Suppl. Br. 3 (citing *Escamilla v. Elliott*, 816 F. App'x 919, 923 (5th Cir. 2020)). But unlike the *Escamilla* plaintiff, Plaintiff: (1) did not reference Section 1983 anywhere in his Amended Complaint; (2) did not plead facts sufficient to establish a Section 1983 claim; and (3) took no action in response to the Court's order, set forth in the Dismissal Opinion, that he must adequately plead his Section 1981 claim. *See Dixon v. Plano Indep. Sch. Dist.*, No. 4:22-CV-148-SDJ, 2023 WL 5434761, at *6-7 (E.D. Tex. Aug. 23, 2023).

the underlying claim of a violation of rights: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005) (cleaned up).

Here, Plaintiff neither pleaded the requisite elements under Section 1983 nor submitted summary judgment evidence in support of such elements. And though Plaintiff argues that he could submit supporting evidence, *see* Pl.'s Suppl. Br. 6, he has failed to timely do so, and his argument is deficient at least with respect to the second element.

The second element—an official policy—is most clearly established through a policy statement formally announced by an official policymaker. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010) (citation omitted). When an official policy is not explicit, however, a persistent and widespread practice by city officials or employees that is so common and well settled as to constitute a "custom" will suffice. *Id.* at 168-69. Plaintiff relies on the latter option here. *See* Pl.'s Suppl. Br. 6 ("The evidence if allowed would show a policy-by-custom . . . ."). Thus, Plaintiff must show that prior incidents "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)). The "pattern of abuses" must "transcend[] the error made in a single case." *Id.* at 850-51 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001)). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Id.* at 851 (alteration in original) (quoting *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

According to Plaintiff, he has evidence that would show a pattern of "subjecting not just [Plaintiff], but all the employees of the Corsicana Police Department, to a racially discriminatory environment and punishing them for speaking out." Pl.'s Suppl. Br. 6. Plaintiff claims that an investigatory report[7] "recounts complaints levied by scores of Corsicana police officers" and "made specific findings of retaliation." *Id.* Plaintiff neither attached this report to his Supplemental Brief nor moved for leave to file it.[8] This case has been pending for more than two years, but Plaintiff did not mention this evidence until shortly before trial, after summary judgment briefing had closed. Moreover, the Court cannot conclude from Plaintiff's arguments that the incidents allegedly set forth in the report occurred for a long enough period of time, were frequent enough, or were similar to the violations Plaintiff challenges in this lawsuit. Because of Plaintiff's undue delay in identifying additional evidence, and because Plaintiff has not adequately argued that such evidence would show a legally sufficient policy or custom, Defendant is entitled to summary judgment on Plaintiff's Section 1981 retaliation claim.

*iv. Tortious Interference with Contract*

In addition to his statutory claims, Plaintiff brings a Texas state law claim for tortious interference with contract premised on his termination by Navarro College. Am. Compl. ¶¶ 98-101. Defendant seeks summary judgment on this claim either because Defendant is immune from the claim or because there is no evidence to support it. Def.'s Br. ¶ 58.

---

[7] Plaintiff also refers to related deposition testimony. Pl.'s Suppl. Br. 6.

[8] The Court acknowledges that, in Plaintiff's Supplemental Brief, Plaintiff asked the Court to grant him leave to "file evidence showing the existence of a genuine question of material fact." Pl.'s Suppl. Br. 9. But this request was never made by a proper motion for leave to file the evidence.

*a. Immunity*

Defendant argues that, as a governmental entity, it is immune from Plaintiff's tortious interference with contract claim. *Id.* ¶ 60. Defendant further contends that the Texas Tort Claims Act ("TTCA") does not waive immunity for intentional tort claims. *Id.* However, as Plaintiff points out, Defendant's analysis skips a step. *See* Resp. 12-13.

Absent a waiver, political subdivisions of a state, such as cities, are immune from suit and liability only when acting in a governmental capacity. *Hudnall v. Texas*, No. EP-22-CV-36-KC-RFC, 2023 WL 2338009, at *9 (W.D. Tex. Mar. 2, 2023) (citing *Rogers v. City of Houston*, 627 S.W.3d 777, 794 (Tex. App.—Houston [14th Dist.] 2021, no pet.)). As such, analyzing a municipality's immunity from suit involves two determinations: (1) whether the claim arises out of a governmental or proprietary function and (2) if it is governmental, whether the TTCA waives immunity. *Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 389 (Tex. App.—Fort Worth 2008, no pet.) (citations omitted). "The governmental/proprietary dichotomy recognizes that immunity protects a governmental unit from suits based on its performance of a governmental function but not a proprietary function." *Wasson Ints., Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146 (Tex. 2018) (citation omitted). Governmental functions are "in the performance of purely governmental matters solely for the public benefit." *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006) (citation omitted). By contrast, proprietary functions are those "performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the municipality" and "not as an arm of the government." *Wasson Ints.*, 559 S.W.3d at 147 (citation omitted). Proprietary acts do not implicate sovereign immunity because "they are not performed under the authority, or for the benefit, of the sovereign." *Id.* (citation omitted).

Here, Plaintiff claims that Chief Johnson, on behalf of Defendant, was acting in a proprietary capacity when he "called Navarro College to complain about [Plaintiff]." Resp. 14. Chief Johnson called Navarro College after learning that Plaintiff "had posted a body-worn camera video, from his time in Corsicana, on his social media page." Def.'s App., Ex. A, at 7. Chief Johnson called Chief Bailey at Navarro College and requested that he "ask [Plaintiff to] take down the post." *Id.* It does not appear to the Court that this phone call represented a function that Defendant "*must* do for its citizens" but rather one that it "*may, in its discretion,* perform for its inhabitants." *Canario's, Inc. v. City of Austin*, No. 03-14-00455-CV, 2015 WL 5096650, at *3 (Tex. App.—Austin Aug. 26, 2015, pet. denied) (citation omitted); *see also Hudson v. City of Houston*, 392 S.W.3d 714, 723-24 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (holding that immunity did not bar a plaintiff's claim where providing a defense and indemnity to employees was not a function the state required of a city and where that conduct was not integral to the city acting as an arm of the state). And Defendant provided no argument on the issue, so it has not proven that it is entitled to summary judgment.

Because Plaintiff's claim does not arise out of a governmental function, the TTCA does not apply. Therefore, the Court concludes that Defendant is not immune from Plaintiff's tortious interference with contract claim.

*b. Merits*

However, Plaintiff's claim fails on its merits. To establish a tortious interference with contract claim, Plaintiff must show: (1) the existence of a valid contract subject to interference; (2) that Defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused Plaintiff's injury; and (4) that Plaintiff incurred actual damage or loss. *Cmty.*

*Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017) (citation omitted). Plaintiff's claim stumbles at the third step.

Plaintiff asserts that Defendant, "through the actions of [Chief Johnson], interfered with Plaintiff's employment with Navarro College by, among other things, informing Navarro College of the numerous complaints of discrimination" Plaintiff made against Defendant. Am. Compl. ¶ 98. According to Plaintiff, he "was terminated by Navarro College based on the information it received from Defendant." *Id.* ¶ 100. But the evidence submitted by both parties belies this claim. Chief Bailey testified that he terminated Plaintiff for submitting an outdated photograph of a COVID-19 test in support of a request for sick leave. *See* Def.'s App., Ex. C, at 107-10 (10:21-13:16). And Chief Bailey testified that Plaintiff's termination had nothing to do with his phone call with Chief Johnson and that Defendant did nothing to cause Plaintiff's termination. *Id.* at 114-15 (24:14-25:18); Pl.'s App., Ex. P, at 122 (67:18-20).

Plaintiff counters that a jury "could reasonably conclude" that Chief Johnson's phone call made Chief Bailey's attitude toward Plaintiff change, which resulted in Plaintiff's termination. Resp. 14. But Plaintiff submits no evidence creating a genuine dispute of material fact on this speculative point. And at the summary judgment stage, Plaintiff's speculation does not suffice. *RSR Corp.*, 612 F.3d at 857. Defendant is entitled to summary judgment on Plaintiff's claim for tortious interference with contract.

*v. Damages*

Finally, Defendant challenges Plaintiff's employment discrimination claims on the ground that Plaintiff has provided no evidence that Defendant's conduct caused Plaintiff's injury. Def.'s Br. ¶¶ 53-54. Having reviewed the parties' arguments and evidence, the Court finds that genuine issues of material fact exist such that a reasonable jury might return a verdict in favor of either

party with respect to this issue. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87. Thus, Defendant's causation argument does not alter the Court's decisions above.

### *C. Plaintiff's Motion for Leave to Amend*

In response to the Court's request for supplemental briefing on Plaintiff's Section 1981 claim, Plaintiff filed an Alternative Motion for Leave to Amend ("Motion to Amend"). *See* Pl.'s Suppl. Br. 7-8. Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course. After that, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court should freely give leave [to amend] when justice so requires." *Id.* The Court considers five matters in determining whether to grant leave to amend: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 428 (5th Cir. 2016) (citation omitted).

The Court finds that Plaintiff's undue delay precludes amendment at this late stage. This lawsuit has been pending for over two years, and trial is less than two months away. *See* Second Am. Scheduling Order [ECF No. 60] 1. All deadlines, other than those related to trial, have run. And Defendant has filed a summary judgment motion, which is fully briefed. *See Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) (affirming district court's denial of leave to amend where the defendant had filed a motion for summary judgment and the case had been pending for two and a half years). The Court clearly explained the problem with Plaintiff's Section 1981 claim and instructed Plaintiff to "adequately plead" the claim "in any amended complaint." Dismissal Op. 11. And even after Defendant highlighted in its summary judgment

briefing that Plaintiff had not corrected the deficiencies identified by the Court, Plaintiff did not move for leave to amend until the Court ordered supplemental briefing on the issue.

Further, the Court concludes that amendment would be futile. Plaintiff states that "as shown above [in Plaintiff's Supplemental Brief], the evidence shows that each element of the § 1983 claim may be proven with the discovery on-hand." Pl.'s Suppl. Br. 8. But, for the reasons set forth above, neither the arguments in Plaintiff's Supplemental Brief nor the allegations in Plaintiff's Amended Complaint suffice to create a factual dispute about Defendant's liability under Section 1983.

Finally, Plaintiff violated multiple Local Rules in making his request for leave to amend. First, he did not include the requisite certificate of conference. *See* N.D. TEX. CIV. R. 7.1(b). Second, he did not "attach the proposed amended [complaint] to the motion as an exhibit." N.D. TEX. CIV. R. 15.1(b). These additional reasons reinforce the Court's determination that amendment is not warranted. The Court denies Plaintiff's Motion to Amend.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant City of Corsicana's Motion for Summary Judgment [ECF No. 48]. The Court **GRANTS** the Motion as to Plaintiff's Title VII disparate treatment and national origin-based hostile work environment claims, Section 1981 retaliation claim, and tortious interference with contract claim. These claims are **DISMISSED WITH PREJUDICE**. The Court **DENIES** the Motion as to Plaintiff's Title VII retaliation and sex-based hostile work environment claims.

**SO ORDERED.**

SIGNED August 14, 2026.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**